UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHARON L. KUNTZ,<br><br>Plaintiff,<br><br>v.<br><br>DAN M. TANGHERLINI, et al.,<br><br>Defendants. | CASE NO. C14-152 MJP<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Defendants' Motion to Dismiss and/or for Summary Judgment (Dkt. No. 20),

2. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 28),

3. Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss and/or for Summary Judgment (Dkt. No. 31),

and all exhibits and declarations, plus relevant portions of the court record, rules as follows:

IT IS ORDERED that Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are DISMISSED with prejudice.

**Background**

Plaintiff was hired to a term-limited position[1] with the Government Service Administration's ("GSA") Public Buildings Service as part of a ramp-up to use funding created by the American Reinvestment and Recovery Act ("ARRA"). She was hired on January 4, 2010 and assigned to the Small Projects Team. She was the fourth member of the team; the other three members were men and were all hired before she was (Mr. Hill on August 30, 2009; Mr. Rayburn on August 30, 2009; and Mr. Weber on August 31, 2009).

Plaintiff describes herself as a professional with "extensive experience in architecture and project management," and with "substantial experience in all areas of design and construction including, commercial, institutional, and residential (single, multi-family, and mixed-use)." (Plaintiff Decl., ¶ 4.) Defendant produced evidence that Plaintiff held no degrees in architecture (but did have an Associate Degree in drafting technology) and was not a licensed architect. (Mittet Decl., Exh. 5.)

Plaintiff was hired at the base salary for the position (GS 12, Step 1). Rayburn, who had a Bachelor's Degree in architecture and 20+ years of experience, was hired at a GS 12, Step 7 (approximately $13,000/year more than Plaintiff made); Weber, with a Bachelor's and a Master's in architecture and 10+ years of experience, was hired at a GS 12, Step 8 (approximately $15,000/year more than Plaintiff). The Code of Federal Regulations ("CFRs") permits an agency to pay an employee above the minimum rate upon a determination that the employee has "superior qualifications" for the position. (5 C.F.R. § 531.212.) Both Rayburn

---

[1] Per 5 C.F.R. § 316.301, "an agency may make a term appointment for a period of more than one year but not more than four years to positions where the need for an employee's services is not permanent, but is rather needed to support project work, or an extraordinary workload. Term-limited appointments initially are for a thirteen-month period to be extended each year if there is still a need, but not to exceed four years. Mittet Decl., Exhibit 5." Dkt. No. 20, Defendant Brief at 4.

and Weber (who were already making more than the entry level GS 12, Step 1 salary) were determined to be overqualified for the Small Team Project positions -- the agency processed a salary increase request through the bureaucratic channels and it was approved for both men. Hill, who had neither a degree nor an architect's license (but did have construction project management experience), was hired on at the same base GS 12, Step 1 salary as Plaintiff.

Extensions of the term-appointed employees were decided on a year-to-year basis based on determinations of need and available funding. (Decl. of Gillies; Decl. of Mittet, Exh. 5.). All term employees were extended into FY 2011. The ARRA funding ended around September 2011, however, forcing the unit to decide whether it could pay term employees past the expiration of FY 2011 using regular operating funds. The decision was made that there was sufficient ongoing work to extend the term employees into FY 2012, but that each term employee would be released upon the expiration of their term appointment in that year. (Decl. of Gillies, Exh. 2.) This meant that Plaintiff's term expired in February 2012 and the terms of the remaining two members of her team (Hill had since taken a permanent position with another department) expired in September and October of that year. (Decl's of Gillies, Brown and Mittet; Exh's 14, 15, and 16.) All term employees were terminated at the conclusion of their term in 2012.

Shortly after being advised that her employment would be terminated at the conclusion of her current term, Plaintiff filed an EEO complaint on October 5, 2011. (Decl. of Kuntz, ¶ 27.) In this lawsuit, Plaintiff pleads claims for gender discrimination and retaliation in violation of Title VII and unequal pay in violation of the Equal Pay Act ("EPA").

**Discussion/Analysis**

Although Defendant titles the moving papers "Motion to Dismiss and/or for Summary Judgment," the vast majority of the argument centers around evidence external to the complaint

and legal theories that are only compatible with summary judgment. There is an incidental 12(b)(6) issue related to the Equal Pay Act claim (*see* infra), but this is essentially a summary judgment motion and the Court's analysis proceeds on that basis.

Summary Judgment Standard

Summary judgment is appropriate if the pleadings and evidence demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Fairbanks v. Wunderman Cato Johnson, 212 F.3d 528, 529 (9th Cir. 2000). Once proof to that effect has been adduced, the non-movant must respond with "specific facts" demonstrating that material issues do exist for trial. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). A defendant may make the requisite showing regarding a plaintiff's case by demonstrating that there is an absence of evidence to support the plaintiff's lawsuit. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Discrimination

Plaintiff's allegations present a disparate treatment claim, which calls in turn for a classic McDonnell-Douglas analysis.

> To establish a *prima facie* case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

There is no argument that Plaintiff was in a protected class, and no allegations that she was not performing to "legitimate expectations."

Defendant asserts that Plaintiff cannot establish her *prima facie* case on the last element of her proof: that similarly situated individuals not in the protected class were treated more favorably than she was. There are two ways of looking at this, and Plaintiff loses under either perspective. In the sense that Plaintiff and her two male comparators (Rayburn and Weber) were all term employees and thus similarly situated, they were all treated identically; i.e., terminated at the conclusion of their term within the fiscal year that the decision was made to close down the team. No one on the Small Projects Team was continued past the 2012 fiscal year. If Plaintiff's appointment had been renewed past her anniversary date in February 2012, her employment would have extended into FY 2013.

In the sense that Plaintiff and the two men were term employees who were hired on different dates, they are not similarly situated. The only scenario under which Plaintiff could argue that the three of them were similarly situated persons who were treated in a different fashion would be one in which she was let go at the end of her term and the other individuals were retained past the natural termination date of their terms. There is no evidence that this is what happened – Plaintiff does not deny that Rayburn and Weber were terminated at the conclusion of their term of appointment.

The facts are not in dispute. Having proven that Plaintiff has failed as a matter of law to establish a crucial element of her *prima facie* discrimination case, Defendants are entitled to summary judgment on this claim.

<u>Retaliation</u>

Plaintiff must satisfy a modified <u>McDonnell-Douglas</u> test for her retaliation claim.

> The plaintiff must first establish a prima facie case of retaliation by showing that she engaged in a protected activity, that she was thereafter subjected by her employer to adverse employment action, and that a causal link exists between the two.

Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982)(*citations omitted*).  Plaintiff alleges that the retaliation occurred following the filing of her EEO complaint in early October 2011.

Plaintiff must establish that some "adverse employment action" befell her following her engagement in a protected activity.  Defendant makes no argument that the filing of the EEO complaint is not a protected activity, but does challenge that any adverse action occurred in the wake of Plaintiff filing the complaint.[2]

Plaintiff devotes a little over a page of briefing to this claim, only a paragraph of which discusses her proof of "adverse action."  That paragraph focuses solely on her claim that, following the filing of the complaint, she received no assistance in transitioning her projects. (Decl. of Kuntz, ¶ 28.)  Her declaration reflects her belief that only she had the skills to complete the jobs she was working on toward the end of her term on the Small Projects Team, but she claims that upon requesting to be allowed to work long enough to finish those projects, she was told that one of the permanent Civil Service employees in the department would "just have to transition the projects."  (Id. at ¶ 30.)  Plaintiff alleges that the stress of trying to perform this transition under these circumstances caused her a "severe insulin reaction" in November 2011 and (on doctor's orders) she was forced to take two days off from work.  (Id. at ¶ 31.)

Even under the relaxed standard for "adverse employment actions" that characterizes the law of retaliation, Plaintiff has failed to establish the required proof to permit her claim to go forward.  A review of the types of employment circumstances which have failed to qualify as "adverse actions" in the retaliation context reveals conduct considerably more impactful than

---

[2] Defendant initially asserts that Plaintiff's supervisor was unaware that the EEO complaint had even been filed, but Plaintiff produces an affidavit from the supervisor acknowledging that he was interviewed by an EEO counselor in October 2011 and thus became aware of the existence of the complaint. (Dkt. No. 30, Decl. of Riese, Ex. 4.)

being refused transitioning assistance – snubbing, threats of termination, verbal reprimand[3], ostracism, rudeness[4], and denial of leave.[5]  If none of those behaviors have been found to constitute an adverse employment action adequate to support a retaliation claim, the Court is hard-pressed to find that not being offered the assistance one feels is required to transition projects successfully at the conclusion of a term of employment[6] rises to the necessary level.

Nor do Plaintiff's proof problems end there.  It is the law in the Ninth Circuit that Plaintiff's claimed adverse employment action must be such that it would "deter reasonable employees from complaining about the Title VII violations" in order to constitute "actionable retaliation."  Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  In order for her retaliation claim to survive, Plaintiff would have to convince the Court (and, ultimately, a jury) that, had she known that she would not receive adequate assistance to properly transition her cases, she would not have filed her EEO complaint.  Although it certainly strains credulity to accept that proposition, the Court need only point out that Plaintiff asserted no such claim in her motion or her declaration.

And, finally, Plaintiff's burden requires that she establish by a preponderance of the evidence that, but for engaging in the protected activity, she would not have been subjected to the alleged adverse action.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002).  Plaintiff has adduced no proof whatsoever that her employer would have offered her the transitioning support she believes she required but for her filing of the EEO complaint.  She

---

[3] Hellman v. Weisberg, 360 Fed.Appx. 776, 778 (9th Cir. 2009)
[4] Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8th Cir. 2002)
[5] Chiang v. Patrick R. Donahoe, 2013 WL 5746007 *3 (S.D.N.Y. Oct. 23, 2013)
[6] Plaintiff offers no evidence of what might constitute "proper" transition support.

has only her personal opinion/speculation that this is the case (Decl. of Kuntz at ¶ 31) – the law requires more.

Again, Plaintiff fails to establish the requisite proof of her *prima facie* case in response to Defendants' summary judgment challenge, and her retaliation claim will be dismissed on that basis.

Equal Pay Act

The only valid FRCP 12(b)(6) issue presented by Defendants' motion arises in respect to the EPA cause of action: Defendant makes the point that any EPA claim in excess of $10,000 is under the exclusive jurisdiction of the Federal Claims Court. 28 U.S.C. §§ 1346(a)(2), 1491. Plaintiff stipulates that her EPA claim is limited to $10,000. (Dkt. No. 28, Response at 10.)

While Defendants acknowledge that Plaintiff has a *prima facie* case under this statute (employees of the opposite sex were being paid more money for the same work), they also point out that a pay differential based on any factor other than sex constitutes a defense to an EPA claim. 29 U.S.C. § 206(d)(1)(iv). The defense to the EPA claim in this case resides in the regulation which permits a government agency to offer salary increases to employees with "superior qualifications." 5 C.F.R. § 531.212(b).

The evidence that Rayburn and Weber had superior qualifications ("superior" on an objective scale and "superior" to Plaintiff's) is unequivocal. Both men, with Bachelors' degrees (and, in Weber's case, a Master's) and decades of experience as licensed architects, were over-qualified for the positions (Decl. of Mittet, Exhibit 6) and were coming from jobs where they had been paid more than the GS 12, Step 1 salary which was the base for the Small Project Team positions. (Id. at Exhibits 5, 7.) The CFRs permit the agency, under those circumstances, to offer salary increases. Teninty v. Geren, 776 F.Supp.2d 725, 734 (N.D.Ill. 2011).

By contrast, Plaintiff had an Associate's degree in drafting, neither a Bachelor's nor a Master's degree and no license as an architect. While she maintains that she was more skilled in some areas than her co-workers, she does not dispute that she lacked experience in the kind of $1+ million projects that her colleagues in the Small Projects Team were being assigned and, by any objective standard, her qualifications were not equal or superior to those of Rayburn and Weber. In the end, she is asking us to second guess the agency's business decision about what they needed to offer these other two members of the team in order to entice them to sign on, and the Supreme Court indicated long ago that this was not an area into which the courts should venture. <u>Washington County v. Gunther</u>, 452 U.S. 161, 170-71 (1981)("courts and administrative agencies are not permitted to substitute their judgment for the judgment of the employer…")(internal quotations omitted).

Defendants are entitled to a summary judgment award of dismissal regarding Plaintiff's Equal Pay Act claim.

**Conclusion**

The Court finds that there are no genuine issues of disputed material fact and that, as a matter of law, Defendants are entitled to summary judgment on all of Plaintiff's causes of action: discrimination, retaliation and Equal Pay Act violations. It is the order of this Court that summary judgment in Defendants' favor is GRANTED and all of Plaintiff's claims are DISMISSED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 8th day of April, 2015.

Marsha J. Pechman
United States District Judge

ORDER ON MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT- 9